UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X
                                      :

UNITED STATES OF AMERICA,            :

                                        :

        -v-                         :             21 Cr. 56 (JPC)
                                        :          25 Civ. 3126 (JPC)

ROBERT SHANNON,                :

                                        :          <u>OPINION AND ORDER</u>

               Defendant.        :

                                          :

-------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

Robert Shannon is serving a sentence of 260 months' imprisonment following his conviction, after a jury trial, of conspiring to distribute fentanyl and heroin and using or carrying a firearm during and in relation to, or possessing firearms in furtherance of, that conspiracy. The Second Circuit affirmed Shannon's conviction and sentence on direct appeal. *United States v. Shannon*, No. 23-52, 2024 WL 2209209 (2d Cir. May 16, 2024). Shannon now moves pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence, claiming ineffective assistance of counsel and asserting that he was convicted under unconstitutional statutes. For the reasons that follow, Shannon's motion is denied.

## I. Background

Shannon and his co-conspirators operated a large-scale drug-trafficking operation out of a stash house in East Orange, New Jersey. Dkt. 217 ("PSR") ¶ 10.[1] On October 27, 2020, one of Shannon's co-conspirators (the "CW") was arrested after engaging in a controlled purchase of sham narcotics from a confidential source working with law enforcement. Tr. at 57-75, 474-489;

---

[1] All docket citations refer to the docket in *United States v. Roderique*, No. 21 Cr. 56 (JPC) (S.D.N.Y.). The transcript from the trial, Dkts. 153-166, is cited as "Tr." and the exhibits received in evidence at trial are cited as "Exh."

PSR ¶ 16.  Shortly after his arrest, the CW expressed an interest in cooperating with law enforcement.  Tr. at 81-82, 275-276, 493-94.

The CW informed law enforcement that he was working with Shannon and others, that their narcotics operation was based in a stash house in East Orange, and that large quantities of narcotics and firearms were stored at that location.  *Id.* at 81-84, 493-98.  Shannon previously had called the CW, while the CW was in the Bronx, asking for fifty grams of fentanyl that Shannon intended to sell to his own customers.  *Id.* at 499-500; PSR ¶ 17.  After the CW began cooperating, law enforcement transported the CW to the vicinity of the East Orange stash house.  Tr. at 500, 505. While on their way to New Jersey, the CW received another call from Shannon, during which Shannon inquired about the location of certain bricks of heroin.  *Id.* at 502. The CW then tried to stall Shannon so he would not leave the stash house until law enforcement arrived.  *Id.* at 502-03.

Upon arriving at the stash house, law enforcement observed Shannon exit carrying a black bag.  *Id.* at 86-87; PSR ¶ 18.  Shannon then went into a car, at which point law enforcement approached the vehicle, placed Shannon under arrest, and seized the black bag, which contained "a large amount of heroin and fentanyl."  Tr. at 87; PSR ¶ 18; *see* Tr. at 86-87, 90-92, 280-83; Exhs. 203A, 1201.  Later that night, law enforcement conducted a search of the stash house and seized, *inter alia*, large quantities of fentanyl, heroin (including black tar heroin), cutting agent, cash, and other drug paraphernalia such as a "kilo press," box fans, respirator masks, "various types of blenders," strainers, and cookie sheets, which are "all items commonly used in a stash house."  Tr. at 285-302; PSR ¶ 19; *see* Exhs. 201C-K, 201M-P, 201U-V, 202A-C, 202K.  Two empty kilogram wrappers and cutting agent were also discovered in Shannon's residence in Jersey City.  PSR ¶ 19.

Additional details of Shannon's role in the narcotics operation came out at trial. For instance, the CW would travel with Shannon to a smoke shop in the West Village of Manhattan to buy supplies for their narcotics operation, including cutting agent, and Shannon communicated with that smoke shop via text messages and phone calls. Tr. at 421-24, 426, 754-68; Exhs. 207A-B, 300A-4, 1207, 1210. Security camera footage also showed Shannon entering or exiting the stash house at least fifteen times in the several weeks leading up to his arrest. Tr. at 287; Exhs. 801, 816, 824, 858, 861-62, 865, 869-72, 874, 876, 880, 882.

In addition to drugs and drug paraphernalia, two firearms were recovered from the East Orange stash house. Tr. at 302-10; Exhs. 201Q-T, 1001, 1002; PSR ¶ 19. The CW explained that the landlord of the stash house had previously stored about seven firearms, including the two ultimately recovered by law enforcement, in a bag in a back room of that house. Tr. at 466-67. In October 2020, the landlord asked the CW to hold on to the firearms. *Id.* Although the CW protested at first, he ultimately took two of the guns and gave them to Shannon and a co-conspirator. *Id.* at 467-68; PSR ¶ 20. Shannon and another co-conspirator continued to store these loaded firearms in the stash house for protection in the event of a robbery. Tr. at 468-69, 471-72; Exhs. 201Q, 201R; *see also* Tr. at 472 (the CW explaining that "[y]ou can't call the police and say you w[ere] robbed for drugs").

On February 4, 2021, a grand jury returned a superseding Indictment charging Shannon and two co-conspirators with conspiracy to distribute controlled substances, specifically fentanyl, cocaine, and heroin, in violation of 21 U.S.C. § 846, and with using and carrying firearms during and in relation to, and possessing firearms in furtherance of, that drug trafficking crime, and aiding and abetting the same, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and (2). Dkt. 12 ¶¶ 1-4. Only Shannon proceeded to trial. On August 16, 2022, after a seven-day trial, a jury returned a verdict

3

convicting Shannon on both counts. Tr. at 993-994.[2]  On December 11, 2022, the Court denied

Shannon's post-trial motions pursuant to Federal Rules of Criminal Procedure 29 and 33, *United

States v. Shannon*, No. 21 Cr. 56 (JPC), 2022 WL 17581558 (S.D.N.Y. Dec. 11, 2022), and on

December 13, 2022, the Court sentenced Shannon to an aggregate term of 260 months'

imprisonment, to be followed by five years of supervised release, Dkts. 215-216.  Shannon

appealed, and on May 16, 2024, the Second Circuit affirmed the conviction and sentence in all

respects.  *Shannon*, 2024 WL 2209209.

On April 10, 2025, Shannon, now proceeding *pro se*, filed the instant motion to vacate, set

aside, or correct his sentence pursuant to 28 U.S.C. § 2255.  Dkt. 246 ("Motion").[3]  The

Government opposed Shannon's motion on June 17, 2025, Dkt. 248, and Shannon filed a reply on

July 8, 2025, Dkt. 249.

## II.  Legal Standards

### A.    Section 2255

A federal prisoner may move the sentencing court to "vacate, set aside or correct" a

sentence when the prisoner asserts that "the sentence was imposed in violation of the Constitution

or laws of the United States, or that the court was without jurisdiction to impose such sentence, or

that the sentence was in excess of the maximum authorized by law, or is otherwise subject to

collateral attack."  28 U.S.C. § 2255(a).  "In ruling on a motion under § 2255, the district court is

required to hold a hearing unless the motion and the files and records of the case conclusively

---

[2] On Count One, the jury found Shannon guilty of conspiring to distribute mixtures and substances containing at least 400 grams of fentanyl and at least 100 grams of heroin, but not cocaine.  Tr. at 993-994.

[3] Because Shannon is proceeding *pro se*, the Court construes his submissions "liberally" and interprets them "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (citation modified).

4

show that the prisoner is entitled to no relief." *Gonzalez v. United States*, 722 F.3d 118, 130 (2d Cir. 2013) (citation modified). Under this standard, "[t]o warrant a hearing, the motion must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle him to relief." *Id.* at 131. The Court need not credit "conclusory allegations" or assertions that "in the face of the record are wholly incredible." *Id.* (internal quotation marks omitted).

**B.    Procedural Default**

A federal prisoner may not use a motion under Section 2255 as a substitute for direct appeal. "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent." *Bousley v. United States*, 523 U.S. 614, 622 (1998) (citation modified). In this context, "cause" requires "something *external*" to the movant that "cannot fairly be attributed to him." *Coleman v. Thompson*, 501 U.S. 722, 753 (1991). For example, "cause" may exist upon a "showing that the factual or legal basis for a claim was not reasonably available to counsel, or that some interference by officials made compliance impracticable." *Murray v. Carrier*, 477 U.S. 478, 488 (1986) (citation modified). By contrast, "the mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default." *Id.* at 486. "The procedural default rule does not, however, apply to claims of ineffective assistance of counsel, regardless of 'whether or not the petitioner could have raised the claim on direct appeal.'" *Velissaris v. United States*, Nos. 22 Civ. 10059 (DLC), 22 Cr. 105 (DLC), 2026 WL 1230817, at *1 (S.D.N.Y. May 5, 2026) (quoting *Yick Man Mui v. United States*, 614 F.3d 50, 54 (2d Cir. 2010)).

## C.    Ineffective Assistance of Counsel

The Sixth Amendment guarantees criminal defendants constitutionally effective counsel. *See McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970) ("It has long been recognized that the right to counsel is the right to the effective assistance of counsel."). To prevail on an ineffective-assistance-of-counsel claim, "a defendant must show: (1) that counsel's representation fell below an objective standard of reasonableness; and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *United States v. Brown*, 623 F.3d 104, 112 (2d Cir. 2010); *see Strickland v. Washington*, 466 U.S. 668, 688-89, 693-94 (1984).

The defendant bears the "heavy" burden of proving both prongs of an ineffective-assistance-of-counsel claim. *Harrington v. United States*, 689 F.3d 124, 129 (2d Cir. 2012). With respect to the performance prong, a reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," recognizing that "[t]here are countless ways to provide effective assistance in any given case." *United States v. Aguirre*, 912 F.2d 555, 560 (2d Cir. 1990) (quoting *Strickland*, 466 U.S. at 689). With respect to prejudice, "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome," so showing that counsel's error had "some conceivable effect" is insufficient. *Strickland*, 466 U.S. at 693-94.

### III.  Discussion

## A.    Ineffective Assistance of Counsel

Shannon argues that he received ineffective assistance of counsel based on three decisions made by his trial counsel: (1) not moving to dismiss the Indictment for lack of venue or jurisdiction; (2) not moving to suppress evidence obtained from searches and his own inculpatory

post-arrest statements; and (3) not requesting certain jury instructions.  The Court considers each decision in turn.

### 1.    Failure to Move to Dismiss for Lack of Venue

Shannon argues that his counsel should have moved to dismiss the Indictment for "lack of venue and/or jurisdiction" because "[t]he alleged [c]onspiracy did not take place in the Southern District of New York."  Motion at 13-14.[4]  Shannon's counsel argued lack of venue to the jury and moved for acquittal or a new trial on venue grounds, but the jury and the Court rejected these challenges.  *Shannon*, 2022 WL 17581558, at *7-8.  As the Court explained, the CW testified that he and Shannon would travel to Manhattan to purchase drug packaging supplies for their trafficking operation, Tr. at 421-24, 426, and that Shannon called him about procuring fentanyl while the CW was in the Bronx, *id.* at 499-500.  *Shannon*, 2022 WL 17581558, at *7.  This evidence sufficiently established venue because "[v]enue for a conspiracy charge lies in any district in which an act in furtherance of the charged conspiracy took place, as long as it was reasonably foreseeable to the defendant that the act would take place in that district."  *United States v. Bimbow*, No. 21 Cr. 48 (JPO), 2022 WL 1617490, at *3 (S.D.N.Y. May 23, 2022) (internal quotation marks omitted); *see also United States v. Rodriguez-Moreno*, 526 U.S. 275, 282 (1999) ("Where venue is appropriate for the underlying crime of violence, so too it is for the § 924(c) offense.").

There is no reason to think that a motion to dismiss the Indictment for lack of venue would have fared better.  Whereas at trial the Government must prove venue by a preponderance of the

---

[4] While Shannon separately suggests that federal jurisdiction is lacking over his offenses of conviction, *see infra* III.B, his argument faulting his attorney for not moving to dismiss because the conspiracy did not take place in this District more properly sounds in a challenge to venue not jurisdiction, and thus the Court treats it as such.

evidence, *United States v. Tang Yuk*, 885 F.3d 57, 71 (2d Cir. 2018), an indictment "need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime," *United States v. Stavroulakis*, 952 F.2d 686, 693 (2d Cir. 1992); *see also United States v. Wedd*, 993 F.3d 104, 121 (2d Cir. 2021) ("At the indictment stage, we do not evaluate the adequacy of the facts to satisfy the elements of the charged offense."). The Indictment alleged that Shannon participated in the narcotics-distribution conspiracy and the firearms offense "in the Southern District of New York and elsewhere." Dkt. 12 ¶¶ 1, 4. And the Government was later able to establish venue by the higher preponderance-of-the-evidence standard at trial. As such, Shannon's counsel did not render constitutionally ineffective assistance by not making a motion that was highly unlikely to succeed, nor could prejudice be shown from the failure to make such a motion.

### 2.    Failure to Move to Suppress

Shannon next argues that his trial counsel should have moved to suppress evidence recovered by law enforcement in searches of his car and the stash house, as well as his post-arrest statements. Motion at 14. Shannon offers just a conclusory assertion that such motions would have succeeded, but the record shows otherwise. *See Puglisi v. United States*, 586 F.3d 209, 214 (2d Cir. 2009) ("[A] district court need not assume the credibility of factual assertions . . . where the assertions are contradicted by the record in the underlying proceeding."). First, Shannon was arrested as he entered a vehicle carrying a bag containing heroin and fentanyl. Any challenge to the search of that vehicle therefore likely would have failed under the automobile or search incident to arrest exceptions to the Fourth Amendment's warrant requirement. *See Arizona v. Gant*, 556 U.S. 332, 351 (2009) ("Police may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest."). Second, any

8

challenge to Shannon's warrantless arrest would have failed in light of "the ancient common-law rule that a peace officer [is] permitted to arrest without a warrant . . . for a felony not committed in his presence if there was reasonable ground for making the arrest." *United States v. Watson*, 423 U.S. 411, 418 (1976). The information from the CW about Shannon's drug-trafficking activities and Shannon's possession of a bag with narcotics easily meet that standard. Finally, Shannon cannot prevail on an ineffective-assistance claim premised on his counsel's failure to move to suppress his post-arrest statements or the results of the search of the East Orange stash house given the absence of an affidavit from Shannon contesting his waiver of his *Miranda* rights and his consent to a search of the stash house. *See* PSR ¶ 18 ("[Shannon] was then advised of his *Miranda* rights, which he waived."); *United States v. Shaw*, 260 F. Supp. 2d 567, 570 (E.D.N.Y. 2003) (collecting cases concluding that, "in the absence of an affidavit based on personal knowledge, no evidence exists to dispute the facts described by the Government"). Shannon's counsel also represented to the Court that he considered a suppression motion, but after providing Shannon with his "advice" on the issue, Shannon opted not to file such a motion. Dkt. 67 (letter from Shannon's counsel, filed November 5, 2021). Thus, here too, Shannon's trial counsel did not render deficient performance in not moving to suppress and, in any event, there is no reasonable probability that the outcome would have been different had any such motions been filed.

### 3.    Failure to Request Jury Instructions

Shannon's third ineffective-assistance argument is that his trial counsel should have requested (1) an instruction that a cooperating witness cannot be a member of a conspiracy and (2) a multiple-conspiracies instruction. Motion at 15-16. The premise of the first desired instruction is legally flawed. A cooperating witness who participated in criminal conduct prior to cooperating with law enforcement—as was the case with the CW here—may still qualify as a co-conspirator for his pre-cooperation conduct. *See, e.g.*, *United States v. Ghagen*, 44 F.4th 99, 102

(2d Cir. 2022); *United States v. Vaughn*, 430 F.3d 518, 521 (2d Cir. 2005); *United States v. Saleh*, 813 F. App'x 678, 680 (2d Cir. 2020) (summary order).  Shannon's counsel's decision not to request a multiple-conspiracies instruction was similarly sound because the evidence at trial established a single, integrated narcotics operation involving Shannon's two co-defendants and the CW, each of whom operated out of the same East Orange stash house.  Not requesting a multiple-conspiracies instruction thus was not ineffective assistance.  *See Forbes v. United States*, 574 F.3d 101, 106 (2d Cir. 2009) ("It is well established that the failure to include a meritless argument does not fall outside the wide range of professionally competent assistance to which a defendant is entitled." (citation modified)); *see also Henry v. Poole*, 409 F.3d 48, 63 (2d Cir. 2005) ("[A]ctions or omissions by counsel that might be considered sound trial strategy do not constitute ineffective assistance." (internal quotation marks omitted)).

**B.     Constitutional Challenges to the Statutes of Conviction**

Shannon argues that 21 U.S.C. § 846 is unconstitutional as applied to him because the Indictment "fails to allege" an effect on interstate commerce.  Motion at 16-18.  Shannon also argues that Section 924(c) is unconstitutional as applied, without explaining why he believes that to be the case.  *Id.* at 18.  As an initial matter, these challenges are procedurally barred because Shannon does not show cause for failing to raise them on direct appeal and is not asserting actual innocence.  *See Bousley*, 523 U.S. at 622 ("Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent." (citation modified)).

10

Moreover, Shannon's constitutional challenges fail on their merits.[5]  The Second Circuit has held that "there is no requirement that the Government establish an interstate commerce nexus in order to support a conviction for narcotics conspiracy."  *United States v. Gunn*, 419 F. App'x 106, 108 (2d Cir. 2011) (summary order); *see also Proyect v. United States*, 101 F.3d 11, 14 (2d Cir. 1996) (holding that Section 846 is a valid exercise of Congress's commerce power).  And regardless, the narcotics conspiracy here plainly involved interstate conduct, given that Shannon and his co-conspirators' drug-trafficking activities spanned New Jersey and New York.  In addition, courts in this Circuit have consistently upheld the constitutionality of Section 924(c)(1)(A)(i) in the face of Second Amendment and Commerce Clause challenges.  *See, e.g., United States v. Bryant*, 711 F.3d 364, 365-66 (2d Cir. 2013) ("[T]he Second Amendment does not safeguard the *unlawful* purpose of possessing a firearm in furtherance of drug trafficking."); *United States v. Yian*, 905 F. Supp. 160, 168 (S.D.N.Y. 1995) ("Section 924(c) contains a jurisdictional element which [ensures], through case-by-case inquiry, that the violation in question is subject to Congress' legislative powers." (citation modified)).

## IV.  Conclusion

For the foregoing reasons, Shannon's motion under 28 U.S.C. § 2255 is denied.  Shannon has not made a substantial showing of the denial of a constitutional right, so a certificate of appealability will not issue.  *See* 28 U.S.C. § 2253(c); *Tankleff v. Senkowski*, 135 F.3d 235, 241 (2d Cir. 1998).  The Court further certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal

---

[5] Shannon does not raise his challenges to the constitutionality of Section 846 and Section 924(c)(1)(A)(i) in connection with his ineffective-assistance claims.  But regardless, because Shannon's constitutional challenges are substantively meritless, Shannon did not receive ineffective assistance of counsel due to his lawyer's failure to raise such arguments.  *See United States v. Nersesian*, 824 F.2d 1294, 1322 (2d Cir. 1987) ("Counsel certainly is not required to engage in the filing of futile or frivolous motions.").

from this Opinion and Order would not be taken in good faith, so *in forma pauperis* status is denied.  *See Coppedge v. United States*, 369 U.S. 438, 445 (1962).  The Clerk of Court is respectfully directed to close *Shannon v. United States*, No. 25 Civ. 3126 (JPC) (S.D.N.Y.), terminate the motion pending at Docket Number 246 in *United States v. Shannon*, No. 21 Cr. 56 (JPC) (S.D.N.Y.), and mail a copy of this Opinion and Order to Defendant Robert Shannon.

     SO ORDERED.

Dated: June 8, 2026
      New York, New York

                                                         JOHN P. CRONAN
                                   United States District Judge